UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05- 612- JBS | |
| v. | : | HON. Jerome B. Simandle | |
| D-1 CO KHANH TANG, a/k/a "Keith," | : | | |
| D-2 JYIMIN HORNG, a/k/a "Jimmy," | : | | |
| D-3 SHUGIN LIU, a/k/a "Gun-Gor," a/k/a "John," | : | 18 U.S.C. § 1962(d) | |
| D-4 PETER CHUN NAM YEUNG, | | 18 U.S.C. § 371 | |
| D-5 YANG GUANG LU, a/k/a "Eddie Lu," a/k/a "Lu Guang Yang," a/k/a "Eric Ho," a/k/a "Yang Lu," a/k/a "Mike," | : : : | 18 U.S.C. § 473 18 U.S.C. § 545 18 U.S.C. § 1956 18 U.S.C. § 2320 18 U.S.C. § 2342 18 U.S.C. § 2 | |
| D-6 MING GAN ZHANG, | : | 18 U.S.C. § 982 | |
| D-7 CHANG Y. LO, | | 18 U.S.C. § 1963 | |
| D-8 GAO RONG XIAO, a/k/a "Chu," | : | 21 U.S.C. § 841 21 U.S.C. § 846 | |
| D-9 JIA QI GU, a/k/a "Jin Qi Gu," a/k/a "George," | : : | 21 U.S.C. § 952 21 U.S.C. § 963 22 U.S.C. § 2778 | |
| D-10 WAI LEUNG CHIU, a/k/a "Paul," a/k/a "Paul Chu," | : | 22 C.F.R. §§ 121.1, 127.1, 129.3, 129.6 & 129.7 | |
| D-11 CHICHERIN LEE, a/k/a "Christopher," | : | | |
| D-12 ZHI QING WU, | : | | |
| D-13 JUNRONG HUANG, a/k/a "Hei-Jun" and | : | | |
| D-14 ALAN HWANG | : | | |
| Defendants | : | | |

# INDICTMENT

THE GRAND JURY IN AND FOR THE DISTRICT OF NEW JERSEY, SITTING AT CAMDEN, CHARGES:

### INTRODUCTION

Counterfeit and Contraband Cigarettes

1. At all relevant times, a "Trademark," as defined in Title 15, United States Code, Section 1127, is any word, name, symbol or device or any combination thereof, used by a person to distinguish his or her goods, including a unique product, from that manufactured or sold by others and to indicate the source of the goods. The term "Mark" includes any trademark.

2. At all relevant times, a "Registered Trademark," as defined in Title 15, United States Code, Section 1127, is a trademark registered in the United States Patent and Trademark Office according to law.

3. At all relevant times, and for purposes of this indictment, a "Counterfeit Mark," as defined in Title 18, United States Code, Section 2320 (e)(1)(A), is a spurious mark that is used in connection with trafficking in goods and services which is identical to, or substantially indistinguishable from, a mark registered for those goods on the principal register for the United States Patent and Trademark Office and in use, and the use of which is likely to cause confusion, to cause mistake, or to deceive the potential purchasers of the counterfeit goods.

4. At all relevant times, and for purposes of this indictment, the term "Counterfeit Cigarettes" refers to cigarettes bearing counterfeit marks and trademarks.

5. The term "Contraband Cigarettes" is a statutorily defined term which means a quantity in excess of 60,000 cigarettes (generally seven cases of cigarettes) which bear no

evidence of the payment of applicable State cigarette taxes in the State where such cigarettes are found, if such State requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes. 18 U.S.C. § 2341(2).

6. States have the concurrent authority and jurisdiction to enact and enforce cigarette tax laws, to provide for the confiscation of cigarettes and other property seized for violations of such laws, and for the administration of such laws, including the imposition of cigarette tax rates. For example, from July 2003 through September 2004, the State cigarette tax on cigarettes sold in New Jersey was $2.05 per package or $20.50 per carton. From September 2004 through the date of this Indictment, the State cigarette tax on cigarettes sold in New Jersey was $2.40 per package or $24.00 per carton.

7. Most States, in order to evidence the payment of applicable State cigarette taxes in the State where such cigarettes are found, require a stamp, impression, or other indication to be placed on packages or other containers of cigarettes.

8. At all relevant times, the States discussed in this Indictment whose cigarette taxes were not paid, namely, New Jersey, Illinois and Pennsylvania, imposed a State tax on cigarettes and required a State cigarette tax stamp on the cigarette packages.

9. The brand name cigarettes "Marlboro" and "Marlboro Lights" are cigarettes manufactured in the United States and elsewhere by Phillip Morris USA and other Phillip Morris companies. At all relevant times, the brand names "Marlboro" and "Marlboro Lights" were Registered Trademarks of Phillip Morris USA.

10. The brand name cigarettes "Newport 100's" are cigarettes manufactured in Greensboro, North Carolina by the Lorillard Tobacco Company. At all relevant times, the brand name "Newport 100's" was a registered trademark of the Lorillard Licensing Company, LLC and

3

the trademark and the right to enforce the trademark was assigned to the Lorillard Tobacco Company.

11. The brand name cigarettes "duMaurier Lights" and "Player's Lights" are cigarettes manufactured in Canada by Imperial Tobacco Canada, Ltd. At all relevant times, the brand names "duMaurier Lights" and "Player's Lights" were Registered Trademarks. In the United States, the trademark for "duMaurier Lights" was owned by Peter Jackson (overseas) Ltd. and the trademark for "Player's Lights" was owned by Phillip Morris USA.

12. The brand name cigarettes "State Express 555" are cigarettes manufactured by the Ardath Tobacco Company, LTD, in England. At all relevant times, the brand name "State Express 555" was a Registered Trademark of the Ardath Tobacco Company, LTD.

13. The brand name cigarettes "Hongtashan" are cigarettes manufactured in Yunnan, China by the Yuxi Hongta Tobacco Co., Ltd. At all relevant times, the brand name "Hongtashan" was a Registered Trademark of the Yuxi Hongta Tobacco Co., Ltd.

14. The brand name cigarettes "Septwolves" are cigarettes manufactured in Longyan, China by the Longyan Cigarette Factory Corporation. At all relevant times, the brand name "Septwolves" was a Registered Trademark of the Longyan Cigarette Factory Corporation.

15. The brand name cigarettes "Shuangxi" are cigarettes manufactured in Guangdong, China by the Guangzhou No. 2 Cigarette Factory. The brand name "Shuangxi" *was not* a Registered Trademark.

16. A "Duty" refers to, among other things, a tax on merchandise imported into the United States. For the years 2001 through 2005, the duty on imported merchandise, including cigarettes, was $1.05 per kilogram, plus 2.3% of the total assessed value of the items in the container.

4

17.  "Bill of Lading" refers to a document that a transportation company possesses, acknowledging that it has received goods, which temporarily serves as the title to the goods during the transport of the merchandise.

18.  "Customs Broker" refers to the importer's agent, licensed by the Bureau of Customs and Border Protection ("Customs"), to enter and clear goods through the United States border.

19.  As used in this Indictment, the term "Container" is a reference to a large metal box approximately 40 feet in length used to transport bulk cargo on board ships as well as on tractor-trailer trucks. It is capable of transporting a maximum of approximately 1,100 cases of cigarettes.

20.  As used in this Indictment, the term "Case" or "Master case" of cigarettes generally describes a case of Contraband Cigarettes which contains fifty (50) cartons of cigarettes; the term "Carton" of cigarettes describes a carton which contains ten (10) packages; the term "Package" of cigarettes describes a package which contains twenty (20) individual cigarettes. Therefore, one case of Contraband Cigarettes typically contains 10,000 individual cigarettes. In some instances, a case of Contraband Cigarettes may contain sixty (60) cartons of cigarettes or 12,000 individual cigarettes. Legitimate cases of cigarettes routinely contain sixty (60) cartons.

Counterfeit Currency

21.  The United States Government alone is authorized by law to manufacture and issue United States Federal Reserve Notes (FRNs or "bills"), which are the official paper currency of the United States of America and are "obligations of the United States" within the meaning of Title 18, United States Code, Section 473.

5

22.     As used in this Indictment, the term "Counterfeit Obligation" means a fraudulent obligation that bears such a likeness or resemblance to any of the genuine obligations issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care.

23.     Beginning in or about 1989 and continuing throughout the period of this indictment, a type of high-quality counterfeit Federal Reserve Notes began to be detected in circulation around the world. Their high quality made it particularly difficult for them to be detected as counterfeit by untrained persons. These highly deceptive counterfeit notes came to be known as "Supernotes."

24.     When counterfeit currency such as the supernote is sold to persons who know it is counterfeit, the sale price is a fraction of the currency's face value. Eventually, counterfeit currency is exchanged for its full face value in goods or other currency, in transactions with persons and entities who do not know or suspect it is counterfeit.

25.     United States currency travels through the international and United States banking system and upon discovery that the currency is counterfeit, it is transmitted to the United States Federal Reserve.

U.S. Munitions List

26.     As used in this Indictment, the term "United States Munitions List" is a list of specific defense articles regulated by the State Department under Section 2778 of Title 22 of the United States Code and accompanying regulations. Regulations are basically rules issued by a government administrative agency. The federal regulations at issue here are the International Traffic in Arms Regulations, which were issued by the United States State Department, which regulate, along with Section 2778, the import and export of military items into and out of the

United States and criminalize the brokering of certain military items without a license and without written approval from the State Department.

    27.    The relevant International Traffic in Arms Regulations for purposes of this Indictment are:

    a.    <u>Code of Federal Regulations § 121.1</u>. This section defines the term "defense article" to mean any item designated in § 121.1 whose export or import is prohibited without a license. Section 121.1 organizes these defense articles into various categories.

    b.    <u>Code of Federal Regulations § 127.1(a)</u> This section states, in relevant part, that it is unlawful to: "conspire to ... import ...or cause to be ... imported ... any defense article ... for which a license or written approval is required ... without first obtaining the required license or written approval from the Office of Defense Trade Controls."

    c.    <u>Code of Federal Regulations § 129.3.</u> This section sets forth the registration and licensing requirements for brokers of defense articles. It states, in relevant part, that a person: "who engages in the business of brokering activities ... with respect to the ... import, or transfer of any defense article ... subject to the controls of this subchapter ... or any "foreign defense article ..." is required to register with the Office of Defense Controls.

    d.    <u>Code of Federal Regulations § 129.6.</u> This section states, in relevant part: "No person may engage in the business of brokering activities without the prior written approval (license) of, or prior notification to, the Office of

7

Defense Trade Controls."

    c.    <u>Code of Federal Regulations – § 129.7.</u> This section lists brokering activities that require prior written approval, including, "(1) Brokering activities pertaining to certain defense articles ... covered by or of a nature described by Part 121, to or from any country, [including] ... foreign defense articles ...and (2) Brokering activities involving defense articles ... covered by, or of a nature described by Part 121, in addition to those specified above, that are designated as significant military equipment ..."

28.    As used in this Indictment, the term "brokering activities" means acting as a broker and includes the financing, transportation, freight forwarding, or taking of any other action that facilitates the manufacture, export, or import of a defense article or defense service, irrespective of its origin. Title 22, United States Code, Section 2778 (b).

29.    As used in this Indictment, the term "foreign defense article" includes any non-United States defense article of a nature described on the United States Munitions List regardless of whether such article is of United States origin or whether such article contains United States origin components. Title 22, United States Code, Section 2778 (b).

30.    As used in this Indictment, the term "The Office of Defense Trade Controls" (or "ODTC") is the office within the State Department which regulates the importation and exportation of defense articles. The ODTC has been renamed the "Directorate of Defense Trade Controls."