## COUNT ONE
### ( Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (RICO) )

D-1    **CO KHANH TANG,**
       a/k/a "Keith,"
D-2    **JYIMIN HORNG,**
       a/k/a "Jimmy,"
D-3    **SHUGIN LIU,**
       a/k/a "Gun-Gor,"
       a/k/a "John"
and
D-4    **PETER CHUN NAM YEUNG**

### THE ENTERPRISE

1.      The general allegations in the Introduction are hereby repeated and incorporated herein by reference.

2.      At all times relevant to the Indictment, in the District of New Jersey, the Central District of California, the Northern District of Illinois, the Eastern District of Pennsylvania and elsewhere, defendants CO KHANH TANG, a/k/a "Keith," JYIMIN HORNG, a/k/a "Jimmy," SHUGIN LIU, a/k/a "Gun-Gor," a/k/a "John" and PETER CHUN NAM YEUNG, defendants herein, and others both known and unknown to the Grand Jury, were members and associates of the "Tang Enterprise," a criminal organization whose members and associates engaged in diverse criminal activities including, but not limited to, trafficking in goods bearing counterfeit marks, trafficking in counterfeit and contraband cigarettes, trafficking in counterfeit Federal Reserve Notes, distribution of crystal methamphetamine and ecstasy, money laundering and arms trafficking, and which operated in the District of New Jersey, the States of California, Illinois and Pennsylvania and points in between, and the countries of Canada, China and elsewhere.

3.      The Tang Enterprise, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was bound together by a common purpose of generating large sums of cash through the conduct of the above-listed criminal activities. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

4.      The purposes of the enterprise included the following:

A.      Enriching the members and associates of the Tang Enterprise through, among other things, trafficking in goods bearing counterfeit marks, trafficking in counterfeit and contraband cigarettes, trafficking in counterfeit Federal Reserve Notes, arms trafficking, distributing narcotics and money laundering.

B.      Promoting and enhancing the enterprise and its members' and associates' activities.

## Roles of the Defendants

5.      The defendants participated in the operation and management of the Tang Enterprise. The Tang Enterprise was structured in the following manner, and the defendants and other persons employed by and associated with the enterprise functioned in the following roles:

A. CO KHANH TANG was the leader and organizer of a highly profitable international smuggling organization that operated from  at least as early as in or

10

about October 2003 through the date of this Indictment.  One aspect of the organization focused on smuggling counterfeit cigarettes, including counterfeit Marlboro and Newport brand cigarettes, that were produced at factories in Country 1 by known and unknown cigarette manufacturers affiliated with CO KHANH TANG. CO KHANH TANG made arrangements with the cigarette manufacturers or their representatives, including Junrong Huang, to produce quantities of counterfeit cigarettes and arranged for the shipments of counterfeit cigarettes to be smuggled into the United States. The counterfeit cigarettes were smuggled into the United States through Port Newark, New Jersey in shipping containers utilizing bills of lading, invoices and packing lists which falsely listed the contents of the containers as either wicker, bamboo or rattan products, plastic toys or other similar items.  The enterprise also imported containers of counterfeit cigarettes through other ports, including the Port of Long Beach in California.   Each shipment contained approximately 800-1,100 cases of counterfeit cigarettes, which equates to approximately 8-11 million cigarettes per load.  The enterprise also utilized undercover federal law enforcement special agents believed to be members of a separate criminal organization ("hereafter undercover agents") to assist in smuggling the containers into Port Newark, storing the counterfeit cigarettes and delivering the cigarettes to buyers at the direction of CO KHANH TANG and other members of the enterprise. CO KHANH TANG negotiated with the buyers of the counterfeit and contraband cigarettes  in the United States and Canada and directed the actions of lower level members of the conspiracy,

including PETER CHUN NAM YEUNG, SHUGIN LIU, Yang Guang Lu, Ming

Gan Zhang, Chang Y. Lo, Gao Rong Xiao, Jia Qi Gu, Wai Leung Chu, Chicherin

Lee, Zhi Qing Wu, Junrong Huang, Alan Hwang and others involved in the

transportation, storage and delivery of counterfeit and contraband cigarettes. In

order to promote and enhance the enterprise, and insure the continued

participation of undercover agents in affairs of the enterprise, CO KHANH TANG

introduced undercover agents to JYIMIN HORNG, a trafficker of counterfeit U.S.

currency, narcotics and weapons. Thereafter, CO KHANH TANG facilitated the

sale and delivery of approximately $3,354,600 in counterfeit Federal Reserve

Notes represented to be manufactured in Country 2 from JYIMIN HORNG to

undercover agents. CO KHANH TANG also facilitated the sale and delivery to

undercover agents of crystal methamphetamine manufactured abroad and

smuggled into the United Stated by JYIMIN HORNG and engaged in brokering

activities with respect to the import and transfer of foreign defense articles

manufactured abroad, described on the United States Munitions List. CO

KHANH TANG arranged the sale of ecstasy from SHUGIN LIU to undercover

agents to further the goals of the enterprise.

    B. JYIMIN HORNG was a high level member of the Tang

Enterprise who supplied the enterprise with counterfeit Federal Reserve Notes,

crystal methamphetamine and other illicit products that were ultimately delivered

to buyers in the global market, including undercover agents. JYIMIN HORNG

negotiated with the buyers of these illicit goods and alleged that he maintained

contacts with foreign officials who authorized the sales of the illicit products. JYIMIN HORNG received payment for the illicit products and arranged for shipment of the illicit goods to the buyers.  JYIMIN HORNG met with other members of the enterprise, including CO KHANH TANG, in the United States, Thailand, China and elsewhere to negotiate sales, coordinate deliveries and resolve problems.  JYIMIN HORNG also met with undercover agents in the United States and Thailand to negotiate the purchase by undercover agents of counterfeit Federal Reserve Notes, crystal methamphetamine and weapons. JYIMIN HORNG maintained and controlled various bank accounts in the names of others at overseas financial institutions to receive payments for the counterfeit Federal Reserve Notes, crystal methamphetamine and weapons and maintained an electronic mail account to communicate in code with undercover agents regarding pending deals.  JYIMIN HORNG maintained close contact with CO KHANH TANG to resolve problems and discuss issues that pertained to various criminal schemes. JYIMIN HORNG also supplied financing to CO KHANH TANG for a container of counterfeit and contraband cigarettes smuggled into the United States.

    C.   SHUGIN LIU was a Pennsylvania-based member of the Tang Enterprise who was primarily involved in the distribution of ecstasy imported into the United States from Canada.  SHUGIN LIU and CO KHANH TANG negotiated the sales of quantities of ecstasy to undercover agents and discussed the establishment of hydroponic marijuana grows with the undercover agents. SHUGIN LIU was also involved with the transportation, storage and distribution

of certain loads of counterfeit and contraband cigarettes imported into the United States for CO KHANH TANG and assisted TANG in laundering proceeds of counterfeit and contraband cigarette trafficking.  To further promote and enhance the Tang Enterprise, SHUGIN LIU met with CO KHANH TANG and JYIMIN HORNG and discussed establishing hydroponic marijuana grows in Country 2.

D.  PETER CHUN NAM YEUNG was a high level member of the Tang Enterprise who was a partner with TANG in the counterfeit and contraband cigarette trade.   PETER CHUN NAM YEUNG was involved with the transportation, storage, and distribution of certain loads of counterfeit and contraband cigarettes delivered  to various locations by undercover agents. PETER CHUN NAM YEUNG acted as a middleman for CO KHANH TANG, and in that capacity met with undercover agents in Canada to coordinate the smuggling of containers of counterfeit and contraband cigarettes into Canada via New Jersey and directly from Country 1.  PETER CHUN NAM YEUNG coordinated the importation and delivery of containers of counterfeit and contraband cigarettes, insured that fraudulent shipping documents were forwarded to undercover agents and supervised other members of the enterprise in the transportation, storage and distribution of the counterfeit and contraband cigarettes, including Gao Rong Xiao and Jia Qi Gu.

E.  The enterprise utilized undercover law enforcement agents posing as members of a separate criminal organization to transport the counterfeit and contraband cigarettes  from an undercover warehouse in New Jersey to locations

14

in New Jersey, Illinois, Pennsylvania and Canada where CO KHANH TANG,
PETER CHUN NAM YEUNG, Yang Guang Lu, Ming Gan Zhang, Chang Y. Lo,
Gao Rong Xiao, Jia Qi Gu, Wai Leung Chu, Chicherin Lee, Zhi Qing Wu and
other members of the enterprise took possession of the cigarettes. Among other
places, the cigarettes were transported and delivered to public storage facilities
where members of the enterprise rented lockers to store the cigarettes pending
subsequent distribution. In some cases, buyers of the counterfeit and contraband
cigarettes would pick up cases of cigarettes directly from the undercover
warehouse at the direction of CO KHANH TANG.

   F. The buyers of the counterfeit and contraband cigarettes, known and
unknown to the Grand Jury, would then re-distribute the cigarettes within the
States of New Jersey, Illinois, New York and Pennsylvania, and Canada, providing
substantial cash profits to the enterprise. The transactions involving counterfeit
and contraband cigarettes were usually paid for in cash. CO KHANH TANG and
other members of the enterprise received large amounts of cash from buyers in
payment for the counterfeit and contraband cigarettes. Other proceeds were
provided to undercover law enforcement agents by CO KHANH TANG as
payment for the smuggling, storage and transportation of containers of
counterfeit and contraband cigarettes.

## THE RACKETEERING CONSPIRACY

6.    From approximately in or about October 2003 and continuing through the date of
this Indictment, in the District of New Jersey, the Eastern District of New York, the Eastern

District of Pennsylvania, the Northern District of Illinois, the Central District of California and
elsewhere,

**CO KHANH TANG,**
a/k/a "Keith,"
**JYIMIN HORNG,**
a/k/a "Jimmy,"
**SHUGIN LIU,**
a/k/a "Gun-Gor,"
a/k/a "John"
and
**PETER CHUN NAM YEUNG**

and others both known and unknown to the Grand Jury, being persons employed by and associated

with the enterprise described above, which enterprise was engaged in, and the activities of which

affected interstate and foreign commerce, did knowingly and intentionally conspire and agree with

each other and with other persons known and unknown to the Grand Jury, to violate Title 18, United

States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the

conduct of the affairs of the enterprise through a pattern of racketeering activity.

**Pattern of Racketeering Activity**

7.      The pattern of racketeering activity, as defined by Title 18, United States Code,

Sections 1961(1) and 1961(5) through which the defendants, CO KHANH TANG, JYIMIN

HORNG, SHUGIN LIU and PETER CHUN NAM YEUNG did combine, conspire and agree

with each other and others to conduct and participate in the conduct of the affairs of the

enterprise consisted of acts involving (1) trafficking in goods bearing counterfeit marks, in

violation of Title 18, United States Code, Section 2320;  (2) trafficking in contraband cigarettes,

in violation of Title 18, United States Code, Section 2342;  (3) dealing in counterfeit Federal

Reserve Notes, in violation of Title 18, United States Code, Section 473;  (4) importation of

16

narcotics and conspiracy to do the same, in violation of Title 21, United States Code, Sections 952 and 963; (5) distribution of narcotics and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846; and (6) money laundering, in violation of Title 18, United States Code, Section 1956, which acts are set forth more particularly below in Racketeering Acts 1 through 32.

8.     It was part of the conspiracy that each defendant agreed that at least two acts of racketeering activity would be committed by a conspirator in the conduct of the affairs of the enterprise. The pattern of racketeering activity consisted of the following acts:

**Racketeering Act # 1**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #1:

**Racketeering Act # 1(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 7]

9.     Between on or about November 11, 2003 and on or about December 10, 2003, in the District of New Jersey and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 1,040 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro," "State Express 555," "Hongtashan" and "Septwolves," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code,

17

Sections 2320(a) and 2.

**Racketeering Act # 1(b) - (Trafficking in Contraband Cigarettes )** [relates to Count 11]

10.     On or about December 8, 2003, in the District of New Jersey and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 540 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act # 1(c) - (Trafficking in Contraband Cigarettes )** [relates to Count 12]

11.     On or about December 10, 2003, in the District of New Jersey and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 500 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #2 - (Dealing in Counterfeit Obligations)** [relates to Count 21]

12.     On or about June 10, 2004, in the District of New Jersey and elsewhere, CO KHANH TANG and JYIMIN HORNG did knowingly and willfully sell, transfer and deliver false, forged, counterfeited and altered obligations of the United States, that is, three counterfeit

$100 Federal Reserve Notes, with the intent that such counterfeit obligations of the United States be passed, published and used as true and genuine, in violation of Title 18, United States Code, Sections 473 and 2.

**Racketeering Act #3**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #3:

**Racketeering Act # 3(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 8]

13. Between on or about July 22, 2004 and on or about February 25, 2005, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 900 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro," "Marlboro Lights" and "Newport 100's," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #3(b) - (Trafficking in Contraband Cigarettes )** [relates to Count 13]

14. On or about August 20, 2004, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and

cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 200 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of Pennsylvania, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #3(c) - (Trafficking in Contraband Cigarettes ) [relates to Count 14]**

15. On or about August 27, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 500 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #3(d) - (Trafficking in Contraband Cigarettes ) [relates to Count 15]**

16. On or about October 1, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 200 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #3(e) - (Trafficking in Contraband Cigarettes ) [relates to Count 16]**

17.     On or about December 30, 2004, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 107 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of Pennsylvania, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #3(f) - (Trafficking in Contraband Cigarettes )** [relates to Count 17]

18.     On or about February 25, 2005, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG, SHUGIN LIU and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 104 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of Pennsylvania, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #4**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #4:

**Racketeering Act #4(a) - (Laundering Monetary Instruments)** [relates to Count 27]

19.     On or about August 24, 2004, in the District of New Jersey and elsewhere,

21

JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $29,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #4(b) - (Laundering Monetary Instruments) [relates to Count 28]**

20.     On or about August 24, 2004, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $21,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #5 - (Dealing in Counterfeit Obligations)** [relates to Count 22]

21.     On or about October 2, 2004, in the District of New Jersey and elsewhere, CO KHANH TANG and JYIMIN HORNG did knowingly and willfully sell, transfer and deliver false, forged, counterfeited and altered obligations of the United States, that is, approximately $339,100 in counterfeit $100 Federal Reserve Notes, with the intent that such counterfeit obligations of the United States be passed, published and used as true and genuine, in violation of Title 18, United States Code, Sections 473 and 2.

**Racketeering Act #6 - (Laundering Monetary Instruments)** [relates to Count 29]

22.     On or about October 19, 2004, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $50,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #7 - (Laundering Monetary Instruments)** [relates to Count 30]

23.     On or about November 1, 2004, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified

23

unlawful activities, namely dealing in counterfeit obligations of the United States contrary to

Title 18, United States Code, Section 473; engaging in brokering activities with respect to the

import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section

2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and

129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United

States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred,

and attempt to transmit and transfer, funds, that is, approximately $154,000 in United States

currency, from a place in the United States to a place outside the United States, that is, Macau, in

violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #8 - (Dealing in Counterfeit Obligations)** [relates to Count 23]

24.     On or about December 17, 2004, in the District of New Jersey and elsewhere,

CO KHANH TANG and JYIMIN HORNG did knowingly and willfully transfer and deliver

false, forged, counterfeited and altered obligations of the United States, that is, approximately

$3,015,000 in counterfeit $50 and $100 Federal Reserve Notes, with the intent that such

counterfeit obligations of the United States be passed, published and used as true and genuine, in

violation of Title 18, United States Code, Section 473 and 2.

**Racketeering Act #9**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #9:

**Racketeering Act #9(a) - (Conspiracy to Import Narcotics)** [relates to Count 25]

25.     From in or about July 2004 and continuing through the date of this Indictment, in

the District of New Jersey, the Central District of California and elsewhere, CO KHANH TANG

and JYIMIN HORNG did knowingly and intentionally conspire and agree with each other and

with others to import into the United States from a place outside thereof, namely China, 50 grams

or more of d-methamphetamine hydrochloride ("crystal methamphetamine"), a Schedule II

narcotic drug controlled substance, contrary to Title 21, United States Code, Sections 952(a) and

960(b)(1), in violation of Title 21, United States Code, Section 963.

**Racketeering Act #9(b)** - **(Importation of Narcotics)** [relates to Count 26]

26.      On or about December 17, 2004, in the District of New Jersey and elsewhere,

CO KHANH TANG and JYIMIN HORNG did knowingly and intentionally import into the

United States from a place outside the United States, namely, China, approximately 390 grams of

d-methamphetamine hydrochloride ("crystal methamphetamine"), a Schedule II narcotic drug

controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(b)(1),

and Title 18, United States Code, Section 2.

**Racketeering Act #10** - **(Laundering Monetary Instruments)** [relates to Count 31]

27.      On or about January 4, 2005, in the District of New Jersey and elsewhere,

JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified

unlawful activities, namely dealing in counterfeit obligations of the United States contrary to

Title 18, United States Code, Section 473; engaging in brokering activities with respect to the

import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section

2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and

129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United

States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred,

and attempt to transmit and transfer, funds, that is, approximately $150,000 in United States

currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

## Racketeering Act # 11

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #11:

## Racketeering Act # 11(a) - (Trafficking in Goods Bearing Counterfeit Marks)

[relates to Count 9]

28. Between on or about January 4, 2005 and on or about February 3, 2005, in the District of New Jersey and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 1,081 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "duMaurier Lights" and "Player's Lights," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

## Racketeering Act # 11(b) - (Trafficking in Contraband Cigarettes ) [relates to Count 18]

29. On or about February 3, 2005, in the District of New Jersey and elsewhere, CO KHANH TANG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 1,081 cases of

cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the State of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #12 - (Laundering Monetary Instruments)** [relates to Count 32]

30.     On or about March 7, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $20,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #13 - (Laundering Monetary Instruments)** [relates to Count 33]

31.     On or about March 16, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United

27

States Code, Section 922(I), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $70,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #14 - (Laundering Monetary Instruments)** [relates to Count 45]

32.     From on or about March 17, 2005 to on or about March 22, 2005, in the District of New Jersey, the Eastern District of New York, the Central District of California and elsewhere, CO KHANH TANG and SHUGIN LIU, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, did knowing and willfully conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically, the receipt, transfer, delivery and other disposition of approximately $40,000 in United States currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband cigarettes, contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #15 - (Laundering Monetary Instruments)** [relates to Count 34]

33.     On or about March 25, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section

28

2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $60,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #16 - (Laundering Monetary Instruments)** [relates to Count 35]

34.     On or about March 29, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $50,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #17 - (Laundering Monetary Instruments)** [relates to Count 36]

35.     On or about April 5, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the

import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $55,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #18 - (Laundering Monetary Instruments)** [relates to Count 37]

36.     On or about April 13, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $40,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #19 - (Laundering Monetary Instruments)** [relates to Count 38]

37.     On or about April 20, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified

unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473;  engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7;  and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $55,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #20** - (**Laundering Monetary Instruments**) [relates to Count 39]

38.     On or about April 29, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473;  engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7;  and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $50,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #21** - (**Laundering Monetary Instruments**) [relates to Count 40]

39.     On or about May 11, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $55,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #22** - (**Laundering Monetary Instruments**) [relates to Count 41]

40.     On or about May 20, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $40,000 in United States

currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #23 - (Dealing in Counterfeit Obligations)** [relates to Count 24]

41.     On or about May 24, 2005, in the District of New Jersey and elsewhere, CO KHANH TANG and JYIMIN HORNG did knowingly and willfully transfer and deliver false, forged, counterfeited and altered obligations of the United States, that is, two counterfeit $100 Federal Reserve Notes, with the intent that such counterfeit obligations of the United States be passed, published and used as true and genuine, in violation of Title 18, United States Code, Sections 473 and 2.

**Racketeering Act #24 - (Conspiracy to Distribute Narcotics)** [relates to Count 46]

42.     From in or about March 2005 to in or about August 2005, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG and SHUGIN LIU did knowingly and intentionally conspire and agree with each other and with others to distribute and to possess with intent to distribute quantities of 3,4-methylenedioxymethamphetamine ("MDMA"), namely ecstasy, a Schedule I narcotic drug controlled substance, contrary to Title 21, United States Code, Section 841(a), in violation of Title 21, United States Code, Section 846.

**Racketeering Act #25 - (Distribution of Narcotics)** [relates to Count 47]

43.     On or about May 25, 2005, in the District of New Jersey, the Eastern District of Pennsylvania and elsewhere, CO KHANH TANG and SHUGIN LIU did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-

methylenedioxymethamphetamine ("MDMA"), namely, ecstasy, a Schedule I narcotic drug
controlled substance, in violation of Title 21, United States Code, Section 841(a) (1) and Title
18, United States Code, Section 2.

**Racketeering Act #26 - (Laundering Monetary Instruments)** [relates to Count 42]

44.      On or about May 31, 2005, in the District of New Jersey and elsewhere,
JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified
unlawful activities, namely dealing in counterfeit obligations of the United States contrary to
Title 18, United States Code, Section 473;  engaging in brokering activities with respect to the
import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section
2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and
129.7;  and unlawfully importing firearms into the United States, contrary to Title 18, United
States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred,
and attempt to transmit and transfer, funds, that is, approximately $60,000 in United States
currency, from a place in the United States to a place outside the United States, that is, Macau, in
violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #27 - (Distribution of Narcotics)** [relates to Count 48]

45.      On or about June 10, 2005, in the District of New Jersey, the Eastern District
of Pennsylvania and elsewhere,  CO KHANH TANG and SHUGIN LIU did knowingly and
intentionally distribute and possess with intent to distribute a quantity of 3,4-
methylenedioxymethamphetamine ("MDMA"), namely, ecstasy, a Schedule I narcotic drug
controlled substance, in violation of Title 21, United States Code, Section 841(a) (1) and Title
18, United States Code, Section 2.

**Racketeering Act # 28**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #28:

**Racketeering Act # 28(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 10]

46.     Between on or about June 10, 2005 and in or about August, 2005, in the District of New Jersey, the Northern District of Illinois and elsewhere, CO KHANH TANG, JYIMIN HORNG and PETER CHUN NAM YEUNG did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 889 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act # 28(b) - (Trafficking in Contraband Cigarettes )** [relates to Count 19]

47.     On or about July 8, 2005 in the District of New Jersey, the Northern District of Illinois and elsewhere, CO KHANH TANG, JYIMIN HORNG and PETER CHUN NAM YEUNG did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 300 cases of cigarettes which bore no evidence of the payment of

35

applicable state cigarette taxes for the State of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #29 - (Laundering Monetary Instruments)** [relates to Count 43]

48.    On or about June 14, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $95,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #30 - (Laundering Monetary Instruments)** [relates to Count 44]

49.    On or about July 12, 2005, in the District of New Jersey and elsewhere, JYIMIN HORNG, knowingly and with the intent to promote the carrying on of specified unlawful activities, namely dealing in counterfeit obligations of the United States contrary to Title 18, United States Code, Section 473; engaging in brokering activities with respect to the import and transfer of foreign defense articles, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1 and 127.1(a), 129.3, 129.6 and 129.7; and unlawfully importing firearms into the United States, contrary to Title 18, United

States Code, Section 922(l), did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, funds, that is, approximately $100,000 in United States currency, from a place in the United States to a place outside the United States, that is, Macau, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act # 31 - (Trafficking in Goods Bearing Counterfeit Marks)**

50.    In or about August 2005, in the District of New Jersey and elsewhere, CO KHANH TANG and JYIMIN HORNG did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 889 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #32 - (Dealing in Counterfeit Obligations)**

51.    In or about August 2005, in the District of New Jersey and elsewhere, CO KHANH TANG and JYIMIN HORNG did knowingly and willfully transfer and deliver false, forged, counterfeited and altered obligations of the United States, that is, approximately $2,000,000 in counterfeit Federal Reserve Notes, with the intent that such counterfeit obligations of the United States be passed, published and used as true and genuine, in violation of Title 18, United States Code, Sections 473 and 2.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, the defendants and their co-conspirators committed and cause to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

1.      On or about October 18, 2003,  CO KHANH TANG met with undercover agents in New Jersey and discussed the cost of importing containers of counterfeit and contraband cigarettes into ports on the East Coast of the United States and Canada.

2.      Prior to on or about November 11, 2003, CO KHANH TANG and PETER CHUN NAM YEUNG, acting in concert with others, caused the transportation into Port Newark, New Jersey of a 1,040 case container of counterfeit and contraband Marlboro, 555 Filter Kings, Hongtashan, Septwolves and Shuangxis brand cigarettes falsely listed on the bill of lading, invoice and packing list as wicker, rattan and bamboo products (Shipment 1) .

3.      On or about December 8, 2003, CO KHANH TANG and PETER CHUN NAM YEUNG caused and directed the transportation of approximately 540 cases of counterfeit and contraband cigarettes from Shipment 1 from an undercover warehouse maintained by the Federal Bureau of Investigation in New Jersey (hereafter "undercover warehouse) to North Bergen, New Jersey where TANG, YEUNG and co-defendants Yang Guang Lu and Ming Gan Zhang took possession of the cigarettes and loaded them into storage lockers.

4.      On or about December 10, 2003, CO KHANH TANG and PETER CHUN NAM YEUNG caused and directed the transportation of approximately 500 cases of counterfeit and contraband cigarettes from Shipment 1 from the undercover warehouse to Jersey City, New Jersey where TANG, YEUNG and co-defendants Yang Guang Lu and Ming Gan Zhang took

possession of the cigarettes and loaded them into storage lockers.

5.     On or about December 10, 2003, CO KHANH TANG met with an undercover agent, paid the agent $60,000 for the agent's importation and delivery services related to Shipment 1 and discussed a potential meeting in Hong Kong with an associate of TANG's to negotiate the illicit purchase and importation of weapons.

6.     On or about February 27, 2004, CO KHANH TANG met with undercover agents in Edgewater, New Jersey and discussed shipping a container of AK-47 assault rifles from Country 1 into the United States through a third country and meeting TANG's weapons contacts in Thailand or Australia.

7.     On or about March 29, 2004, JYIMIN HORNG engaged in a telephone conversation with an undercover agent and discussed arrangements for a meeting overseas to negotiate the sale of illicit weapons to the agent.

8.     On or about March 30, 2004, CO KHANH TANG engaged in a telephone conversation with an undercover agent, informed the agent that his associate overseas had access to counterfeit "green paper," meaning counterfeit United States currency (hereafter "counterfeit currency"or "supernotes") and sell solicited the agent to purchase a quantity of the counterfeit currency.

9.     On or about April 28, 2004, PETER CHUN NAM YEUNG met with undercover agents at a hotel in Toronto, Canada, informed the agents that he was partners with TANG and discussed the cost of importing containers of counterfeit and contraband cigarettes into Canada via New Jersey and directly from Country 1.

10.     On or about May 5, 2004, CO KHANH TANG met with undercover agents

39

in Edgewater, New Jersey, discussed the importation into the United States of a second container of counterfeit and contraband cigarettes, informed the agents that he planned to travel to Country 1 to obtain samples of counterfeit currency and advised the agent that his contacts overseas could obtain quantities of narcotics for the agent.

11.     On or about June 10, 2004, CO KHANH TANG met with undercover agents in Atlantic City, New Jersey and provided the agents with three counterfeit $100 Federal Reserve Notes that he had obtained from JYIMIN HORNG and shipping information related to a second container of counterfeit and contraband cigarettes .

12.     Prior to on or about July 22, 2004, CO KHANH TANG and PETER CHUN NAM YEUNG, acting in concert with others, caused the transportation into Port Newark, New Jersey of a 900 case container of counterfeit Marlboro, Marlboro Lights and Newport 100's cigarettes, falsely listed on the bill of lading, invoice and packing list as wicker, rattan and bamboo products (Shipment 2).

13.     On or about July 28, 2004, CO KHANH TANG and JYIMIN HORNG met with undercover agents in Phuket, Thailand, discussed the purchase of "supernotes," narcotics, assault rifles, and surface-to-air missiles from Country 2, and devised a communications code to disguise future communications.

14.     On or about July 29, 2004, JYIMIN HORNG met with undercover agents in Phuket, Thailand, finalized the purchase by agents of approximately $330,000 in "supernotes," discussed the sale to agents of missiles manufactured by communist countries and stated that the high price of the AK-47 assault rifles was necessitated by the need to bribe officials from Country 2.

40

15.     On or about August 18, 2004, CO KHANH TANG met with undercover agents in Atlantic City, New Jersey, discussed the distribution of Shipment 2 to locations in Pennsylvania, New Jersey and Illinois, and engaged in a telephone conversation with JYIMIN HORNG to discuss the method of payment for the "supernotes."

16.     On or about August 19, 2004, CO KHANH TANG met with undercover agents in Atlantic City, New Jersey and provided instructions for the delivery of 200 cases of counterfeit and contraband cigarettes from Shipment 2 to a location in Philadelphia, Pennsylvania.

17.     On or about August 20, 2004, CO KHANH TANG and PETER CHUN NAM YEUNG caused and directed the transportation of approximately 200 cases of counterfeit and contraband cigarettes from Shipment 2 from the undercover warehouse to Philadelphia, Pennsylvania, where co-defendants Yang Guang Lu and Chang Y. Lo, and a co-conspirator unknown to the Grand Jury, took possession of the cigarettes and loaded them into storage lockers.

18.     On or about August 24, 2004, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $29,000 from a bank account maintained by undercover agents ("undercover bank account") to an account in name of Lee Kan Sing Ken at the Bank of China, Macau.

19.     On or about August 24, 2004, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $21,000 from an undercover bank account to an account in name of Lee Kan Sing Ken at the Bank of China, Macau.

20.     On or about August 27, 2004, CO KHANH TANG and PETER CHUN NAM YEUNG caused and directed the transportation of approximately 500 cases of counterfeit

and contraband cigarettes from Shipment 2 from the undercover warehouse to Chicago, Illinois, where co-conspirators known to the Grand Jury but not charged herein took possession of the cigarettes for further distribution.

21.     On or about September 20, 2004, CO KHANH TANG met with two co-conspirators known to the Grand Jury but not charged herein and undercover agents in Atlantic City, New Jersey, received approximately $75,000 in cash, representing the proceeds from contraband cigarette trafficking, from a co-conspirator, discussed the poor quality of a portion of the cigarettes sent to Chicago and arranged to send 200 additional cases of counterfeit and contraband cigarettes from Shipment 2 to co-conspirators in Chicago, Illinois.

22.     On or about October 1, 2004, CO KHANH TANG and PETER CHUN NAM YEUNG caused and directed the transportation of approximately 200 cases of counterfeit and contraband cigarettes from Shipment 2 from the undercover warehouse to Chicago, Illinois, where co-conspirators known to the Grand Jury but not charged herein took possession of the cigarettes for further distribution.

23.     Prior to on or about October 2, 2004, CO KHANH TANG and JYIMIN HORNG, acting in concert with others, caused the transportation from Country 1 into Port Newark, New Jersey of a shipping container loaded with approximately $338,300 in "supernotes" hidden in boxes of toys.

24.     On or about October 15, 2004, CO KHANH TANG and JYIMIN HORNG met with undercover agents in Atlantic City, New Jersey, negotiated the sale to agents of $1,000,000 in "supernotes, " discussed future sales to agents of cocaine, crystal methamphetamine, automatic rifles and surface-to-air missiles, and agreed to send a catalogue of available weapons

to the agents.

25.     On or about October 17, 2004, CO KHANH TANG and JYIMIN HORNG met with undercover agents in Atlantic City, New Jersey, finalized the sale to agents of $1,000,000 in "supernotes," informed agents that they would provide an additional $3-5 million in "supernotes" as collateral for future deals and were informed that the agents had approximately $1.5 million to spend on weapons. In a later meeting that night, CO KHANH TANG informed undercover agents that JYIMIN HORNG would include a sample of crystal methamphetamine in the shipment of "supernotes."

26.     On or about October 19, 2004, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $50,000 from an undercover bank account to an account in name of Lee Kan Sing Ken at the Bank of China, Macau.

27.     On or about November 1, 2004, an undercover agent, at the direction of CO KHANH TANG and JYIMIN HORNG, caused the wire transfer of $154,000 from an undercover bank account to an account in name of Lee Kan Sing Ken at the Bank of China, Macau.

28.     On or about November 2, 2004, CO KHANH TANG engaged in a telephone conversation with JYIMIN HORNG, informed him that the money for the second shipment of "supernotes" had been sent by the undercover agent and was informed by HORNG that he would mail a weapons catalogue to the agent.

29.     On or about November 9, 2004, CO KHANH TANG met with an undercover agent in California and received $82,000 in cash, representing proceeds from counterfeit and contraband cigarette trafficking that undercover agents had collected on his behalf from a co-conspirator known to the Grand Jury but not charged herein.

43

30.     Prior to on or about November 10, 2004, JYIMIN HORNG caused the delivery by express mail to undercover agents of a weapons catalogue, which listed numerous military style weapons and hardware available for purchase by the agents.

31.     On or about November 12, 2004, CO KHANH TANG engaged in a telephone conversation with Gao Rong Xiao and discussed the market for counterfeit and contraband cigarettes in the United States and Canada.

32.     On or about November 16, 2004, CO KHANH TANG engaged in a telephone conversation with JYIMIN HORNG and was informed that the container of "supernotes" would be sent out in a few days and that a quantity of crystal methamphetamine would be included in the shipment.

33.     On or about November 24, 2004, CO KHANH TANG engaged in a telephone conversation with Yang Guang Lu and discussed the transfer of approximately 107 cases of counterfeit and contraband cigarettes from Shipment 2 from Yang Guang Lu to Wai Leung Chu.

34.     On or about November 24, 2004, CO KHANH TANG engaged in a telephone conversation with Wai Leung Chu, discussed the transfer of cases of counterfeit and contraband cigarettes from Shipment 2 and provided Chu with contact information for Yang Guang Lu.

35.     On or about December 9, 2004, CO KHANH TANG engaged in a telephone conversation with Gao Rong Xiao and discussed sending shipping documents for a container of counterfeit and contraband cigarettes to undercover agents.

36.     Prior to on or about December 17, 2004, CO KHANH TANG and JYIMIN HORNG, acting in concert with others, caused the transportation from Country 1 into Port Newark, New Jersey of a shipping container loaded with approximately $3,015,000 in

44

"supernotes" and approximately 390 grams of crystal methamphetamine hidden in boxes of toys.

37.     On or about December 26, 2004, CO KHANH TANG engaged in a telephone conversation with Yang Guang Lu and was informed that Lu had found a person to handle the transfer of approximately 107 cases of counterfeit and contraband cigarettes from Shipment 2 to to Wai Leung Chu.

38.     Prior to on or about December 29, 2004, CO KHANH TANG, PETER CHUN NAM YEUNG and Gao Rong Xiao caused the delivery by express mail to undercover agents of a bill of lading and invoices for a shipment of counterfeit and contraband cigarettes, falsely listed on the bill of lading as baskets (Shipment 3).

39.     On or about December 30, 2004, Chang Y. Lo, at the direction of CO KHANH TANG and Yang Guang Lu, transferred approximately 107 cases of counterfeit and contraband cigarettes from Shipment 2 from a storage facility in Philadelphia, Pennsylvania to Chicherin Lee and Zhi Qing Wu, who took possession of the cigarettes on behalf of Wai Leung Chu.

40.     On or about December 30, 2004, Wai Leung Chu engaged in a telephone conversation with CO KHANH TANG and acknowledged that he received 107 cases of counterfeit and contraband cigarettes .

41.     On or about January 4, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $150,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

42.     Prior to on or about January 4, 2005, CO KHANH TANG, PETER CHUN NAM YEUNG and Gao Rong Xiao, acting in concert with others, caused the transportation into Port Newark, New Jersey of a 1,081 case container of counterfeit Player's Light and duMaurier

cigarettes falsely listed on the bill of lading and invoice as baskets (Shipment 3).

43.     On or about January 5, 2005, CO KHANH TANG engaged in a telephone
conversation with JYIMIN HORNG and was advised that 50 kilograms of crystal
methamphetamine were available for sale to the undercover agent.

44.     On or about January 6, 2005, CO KHANH TANG engaged in a telephone
conversation with Gao Rong Xiao and informed him that the container of counterfeit cigarettes
(Shipment 3) arrived safely into Port Newark and would arrive at the undercover warehouse the
following week.

45.     On or about January 10, 2005, CO KHANH TANG engaged in a telephone
conversation with an undercover agent, informed the agent that he would send PETER CHUN
NAM YEUNG to Canada to handle delivery of Shipment 3 to Canada and asked about the
agent's purchase of crystal methamphetamine.

46.     On or about January 14, 2005, JYIMIN HORNG sent an electronic mail message
(hereafter "e-mail") to an undercover e-mail account which listed prices for certain weapons
requested by the agents, inquired about the sample of crystal methamphetamine sent to the agents
and requested payment for the additional $2,000,000 in "supernotes" sold to the agents in
December 2004.

47.     On or about January 20, 2005, undercover agents met with CO KHANH TANG
and PETER CHUN NAM YEUNG in California, discussed the delivery of Shipment 3 to Canada
and the importation of precursor chemicals from overseas into the United States and were
informed that YEUNG would handle these matters on behalf of TANG.

48.     On or about January 28, 2005, CO KHANH TANG engaged in a telephone

conversation with JYIMIN HORNG and discussed the price of weapons to be sold by Horng to the undercover agents, the payment schedule for the weapons sold to the agents and an upcoming meeting in China to discuss the sale of weapons to the agents.

49.     On or about February 3, 2005, CO KHANH TANG, PETER CHUN NAM YEUNG and Gao Rong Xiao caused and directed the transportation of Shipment 3 from the undercover warehouse to a public storage facility in Ontario, Canada where Jia Qi Gu and co-conspirators unknown to the Grand Jury took possession of the cigarettes and loaded them into storage lockers.

50.     On or about February 17, 2005, CO KHANH TANG met with undercover agents in Atlantic City, New Jersey, provided a sample carton of counterfeit and contraband cigarettes to be forwarded to a buyer in Chicago, Illinois and discussed the sale of weapons from HORNG to the undercover agents.

51.     On or about February 24, 2005, CO KHANH TANG engaged in a telephone conversation with SHUGIN LIU and discussed the retrieval of cases of counterfeit and contraband cigarettes from Shipment 2.

52.     On or about February 25, 2005, co-conspirators unknown to the Grand Jury, at the direction of CO KHANH TANG, transferred approximately 104 cases of counterfeit and contraband cigarettes from Shipment 2 from Wai Leung Chu to SHUGIN LIU.

53.     On or about March 4, 2005, JYIMIN HORNG sent an e-mail message to undercover agents which requested the undercover agents to pay for the additional $2,000,000 in counterfeit currency because of pressure from "the company."

54.     On or about March 7, 2005, an undercover agent, at the direction of JYIMIN

HORNG, caused the wire transfer of $20,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

55.    On or about March 14, 2005, Jia Qi Gu engaged in a telephone conversation with an undercover agent, advised the agent that half the cigarette load (Shipment 3) was sold and discussed selling 12,500 ecstasy pills to the agent.

56.    On or about March 15, 2005, CO KHANH TANG met with undercover agents in Atlantic City, New Jersey and informed the agents that JYIMIN HORNG'S contacts for obtaining the weapons was a general in Country 1 and a general in Country 2, that the counterfeit currency and sample of "ice" sold to the agents came from Country 2 and that Gao Rong Xiao was responsible for the cigarette load that was delivered to Canada (Shipment 3).

57.    On or about March 16, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $70,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

58.    On or about March 17, 2005, CO KHANH TANG engaged in a telephone conversation with Gao Rong Xiao in which they discussed TANG'S retrieval of $50,000 in counterfeit and contraband cigarette proceeds from co-conspirators in New York.

59.    On or about March 17, 2005, CO KHANH TANG and SHUGIN LIU met with undercover agents in Atlantic City, New Jersey, provided the agents with $40,000 in cash, representing proceeds from counterfeit and contraband cigarette trafficking and discussed the sale of ecstasy to undercover agents by LIU.

60.    On or about March 21, 2005, CO KHANH TANG engaged in a telephone conversation with JYIMIN HORNG in which they discussed a delay in obtaining transportation

48

documents for the weapons and a large supply of counterfeit currency and crystal methamphetamine that HORNG had available for sale to the undercover agents.

61.    On or about March 22, 2005, CO KHANH TANG met with an undercover agent in California and received $40,000 in cash representing proceeds from counterfeit and contraband cigarette trafficking that had been wire transferred from New Jersey to California by undercover agents at the direction of TANG.

62.    On or about March 25, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $60,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

63.    On or about March 26, 2005, CO KHANH TANG engaged in a telephone conversation with SHUGIN LIU and discussed the price to charge the undercover agent for ecstasy and obtaining samples of ecstasy for the agent.

64.    On or about March 28, 2005, CO KHANH TANG and JYIMIN HORNG engaged in a telephone conversation with an undercover agent in which TANG and HORNG informed the agent that the agent had to place a minimum weapons order of $1,000,000, that the agent had to pay 80% up front, and that the weapons would be shipped to the United States within 3-6 months.

65.    On or about March 29, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $50,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau, as a deposit for the weapons deal.

66.    On or about April 3, 2005, CO KHANH TANG engaged in a telephone

conversation with an undercover agent in which he informed the agent that he was bringing back from China new and better samples of counterfeit currency and that JYIMIN HORNG was working on the paperwork for the weapons.

67.    On or about April 5, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $55,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

68.    On or about April 13, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $40,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

69.    On or about April 20, 2005, CO KHANH TANG engaged in a telephone conversation with Junrong Huang and discussed the wire transfer of $30,000 from TANG to a bank account in China maintained by Huang as partial payment for Huang's assistance in arranging the shipment of a load of counterfeit and contraband cigarettes to the United States on behalf of TANG (Shipment 4).

70.    On or about April 20, 2005, CO KHANH TANG engaged in a telephone conversation with JYIMIN HORNG in which he asked HORNG to wire transfer $30,000 to a bank account in China to pay for a shipment of counterfeit and contraband cigarettes (Shipment 4).

71.    On or about April 20, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $55,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

72.    On or about April 27, 2005, CO KHANH TANG engaged in a telephone

50

conversation with Junrong Huang in which Huang told TANG that Shipment 4 would leave China on April 29, 2005 and that the bill of lading would be sent to TANG in May. TANG and Huang also discussed another container of counterfeit and contraband cigarettes to be shipped to the United States (Shipment 5).

73.     On or about April 29, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $50,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

74.     On or about May 2, 2005, CO KHANH TANG engaged in a telephone conversation with Alan Hwang in which Hwang informed him that the bill of lading for Shipment 4 would be sent from China in 4-5 days.

75.     On or about May 11, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $55,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

76.     On or about May 14, 2005, JYIMIN HORNG engaged in a telephone conversation with an undercover agent in which he informed the agent that there was a problem obtaining one of the weapons requested by the agent and urged the agent to select a similar weapon. HORNG also acknowledged receiving the latest payment of $55,000 for the counterfeit currency.

77.     On or about May 20, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $40,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

78.     On or about May 24, 2005, CO KHANH TANG and SHUGIN LIU met with undercover agents in Atlantic City, New Jersey and provided the agents with two counterfeit

51

$100 Federal Reserve Notes and a ten-pill sample of ecstasy available for sale to undercover agents.

79.    On or about May 25, 2005, CO KHANH TANG and SHUGIN LIU met with undercover agents in Atlantic City, New Jersey, sold the agents 8,000 ecstasy pills for $30,000 and discussed the payment of additional money to SHUGIN LIU.

80.    Prior to on or about May 25, 2005, CO KHANH TANG, PETER CHUN NAM YEUNG and Junrong Huang caused the delivery by express mail to undercover agents of a bill of lading for a shipment of counterfeit and contraband cigarettes, falsely listed on the bill of lading as wicker baskets (Shipment 4).

81.    On or about May 27, 2005, SHUGIN LIU met with an undercover agent in Philadelphia, Pennsylvania, received $6,000 from the agent to complete payment for the 8,000 ecstasy pills purchased by the agent and discussed future sales of ecstasy to the agent.

82.    On or about May 31, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $60,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

83.    On or about June 10, 2005, SHUGIN LIU met with an undercover agent in Philadelphia, Pennsylvania, sold the agent 2,000 ecstasy pills for $9,000 and discussed the sale price for 29,000 ecstasy pills possessed by LIU.

84.    Prior to on or about June 10, 2005, CO KHANH TANG, JYIMIN HORNG, PETER CHUN NAM YEUNG and Junrong Huang, acting in concert with others, caused the transportation into Port Newark, New Jersey of a 889 case container of counterfeit Newport 100's cigarettes, falsely listed on the bill of lading and packing list as wicker baskets (Shipment 4).

85.     On or about June 14, 2005, an undercover agent, at the direction of JYIMIN HORNG, caused the wire transfer of $95,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau.

86.     On or about June 28, 2005, JYIMIN HORNG sent an e-mail message to a undercover agent in which he acknowledged receiving $95,000 as payment for counterfeit currency and offered to sell the agent additional quantities of counterfeit currency.

87.     On or about July 8, 2005, CO KHANH TANG, JYIMIN HORNG, PETER CHUN NAM YEUNG and Huang Junrong, caused and directed the transportation of approximately 300 cases of counterfeit and contraband cigarettes from Shipment 4 from the undercover warehouse to an unknown location in Chicago, Illinois.

88.     On or about July 8, 2005, CO KHANH TANG engaged in a telephone conversation with an undercover agent in which he informed the agent that he met someone from "the company," that the arms deal negotiated with HORNG would be delayed and that the general from Country 2 was reluctant to complete the deal at this time because of attacks in London, England.

89.     On or about July 12, 2005, an undercover agent, at the direction of JYIMIN HORNG and CO KHANH TANG, caused the wire transfer of $130,000 from an undercover bank account to an account in name of Chun Chi Liu at the International Bank of Taipei, Macau, $100,000 of which was partial payment for the purchase of counterfeit currency.

90.     On or about August 4, 2005, co-conspirators unknown to the Grand Jury caused the delivery by express mail to undercover agents of a bill of lading, invoice and packing list for a shipment of counterfeit Newport 100's cigarettes, falsely listed on the bill of lading, invoice and

packing list as wicker baskets (Shipment 5).

91.     On or about August 8, 2005, CO KHANH TANG engaged in a telephone conversation with an undercover agent in which he informed the agent that the shipment of $2,000,000 in counterfeit currency had left Country 1.

92.     On or about August 11, 2005, CO KHANH TANG engaged in a telephone conversation with an undercover agent in which he informed the agent that Shipment 5 contained 889 cases of counterfeit Newport 100's cigarettes.

All in violation of Title 18, United States Code, Section 1962(d).

54

## FIRST FORFEITURE ALLEGATION

1.      The allegations in Count One are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendants CO KHANH TANG, JYIMIN HORNG, SHUGIN LIU and PETER CHUN NAM YEUNG that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One of this Indictment.

2.      Pursuant to Title 18, United States Code, Section 1963(a), each defendant who is convicted of the offense set forth in Count One shall forfeit to the United States the following property:

> a.      Any interest acquired or maintained in violation of Title 18, United States Code, Section 1962;
>
> b.      Any interest in, security of, claim against, or property or contractual rights of any kind affording a source of influence over the enterprise described in Count One which was established, operated, controlled and conducted in violation of Title 18, United States Code, Section 1962;
>
> c.      Any property constituting or derived from proceeds obtained directly and indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962;
>
> d.      A sum of money equal to the total value of the property described in paragraphs (a) through (c), including but not limited to at least three million

dollars ($3,000,000). If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount subject to forfeiture under this paragraph.

3.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

All pursuant to the Title 18, United States Code, Section 1963.

56